ST. PAUL MERCURY INDEMNITY CO. OF ST. PAUL *v.* RANDEL.

(Division B.   Jan. 18, 1937.)

[171 So. 786.   No. 32515.]

Watkins & Eager, of Jackson, and Powell & Powell, of Canton, for appellant.

798

**Ray & Spivey** and **F. S. Dunning**, all of Canton, for appellee.

Argued orally by **Weston Segura**, for appellant.

**Ethridge, P. J.,** delivered the opinion of the court.

Appellee, Mrs. L. T. Randel, brought suit against appellant in which she recovered a judgment for five hun-

dred ten dollars for personal injuries sustained by her in the operation of an automobile. The suit was based upon an indemnity policy the pertinent provisions of which are as follows: "In consideration of the payment of an annual premium of Three Dollars, the Company does hereby insure Mrs. L. T. Randel against certain losses from accident, and promises to pay indemnity as hereinafter limited and provide in the event that she shall suffer loss of life, limbs, sight or time exclusively by reason of a personal bodily injury (suicide or self destruction while either sane or insane, not included), which is effected solely through external violent and purely accidental means, and which also is received while she is the owner of and is actually riding in the automobile (or in any one of the automobiles herein described)," etc.

The declaration alleges that the injuries occurred on June 1, 1935, while appellee was the owner of and was actually riding in her own automobile on North Liberty street in the city of Canton, about twelve-fifteen p. m. It is shown by the record that appellee, in this automobile, went to her husband's office each day to take him to lunch; that her mother lived with her and drank certain water for her health; that on this occasion appellee had driven north on North Liberty street, which is a part of Highway 51, to a filling station to procure this water, and after procuring same, she was returning to her home, driving south at about thirty miles per hour. That, in front of her, there was another car going in the same direction. She blew her horn for this car to pull to the side so she could pass, and about this time she saw some one crossing the street, which momentarily diverted her attention from the car in front, which had stopped without pulling to the side, and, to avoid a collision, she pulled to the left, and her car struck the curb of neutral ground, placed there for beautification, throwing her violently forward, and she must have struck the

steering wheel. She testified that she did not remember what occurred at the moment, but drove on home, neither she nor her husband saying anything, and when she went into the house she fainted. A physician was called, came and gave her a hypodermic, and returned in about two or three hours and made an examination, finding in the side of her abdomen a swollen and sore condition, sensitive to touch. After continued treatment, it was found that her gall bladder duct was inflamed, and there were adhesions, and the physician placed a drain in the gall bladder duct to relieve the situation. This physician appears to have been the family physician of Mrs. Randel for many years, and he had treated her for malaria and other troubles prior to this injury, and he testified that, at his first examination after the injury, there was no inflammation of the gall bladder duct, and that it was his professional opinion that the injury was caused by external violence inflicted on the occasion mentioned.

The policy of insurance sued upon contains the following conditions:

"The policy shall not cover any liability of the assured.

"1. Under any workmen's compensation agreement, plan or law;

"2. While any of the insured automobiles are being used for other purposes than specified in Schedule of Statements;

"3. While being operated by any person under the age limit fixed by law, or under the age of fourteen years in any event.

"4. When used in any race or speed contest.

"5. When used for towing or propelling a trailer, or any vehicle used as a trailer, unless such privilege is endorsed thereon and a proper premium charged therefor, or such trailer is also insured by the Company, but incidental assistance to a stranded vehicle on the highway is permitted.

"6. When used for renting or livery use and the carrying of passengers for a consideration, (if a private passenger automobile):

"7. When used for the carrying of passengers for a consideration (if a commercial automobile). This exclusion may be endorsed out for ambulances or invalid carrier.

"8. For bodily injuries or death to an employee of the Assured while engaged in the operation, maintenance or repair of any disclosed automobile, or injured in the course of employment in the business of the Assured, or to any person to whom the Assured may be held liable under any workmen's Compensation Law.

"9. When used to transport high explosives (carrying of loaded cartridges for gun or pistol permitted);

"10. Applying to the collision coverage, this policy shall not cover loss or damage caused directly or indirectly by fire and/or theft. It does not cover loss or damage to any tire due to puncture, cut, gash blowout, or other ordinary tire trouble; and in no event for loss or damage to any tire unless caused in an accidental collision or upset which also caused other loss or damage to the insured automobile."

The appellant insurance company pleaded the general issue, giving special notice thereunder that it intended to show, by competent evidence, that the policy expressly stipulates that the indemnity therein provided and limited is in the event that the plaintiff, the insured, shall suffer loss of life, limbs, sight, or time exclusively by reason of a personal bodily injury effected solely through external, violent, and purely accidental means, while plaintiff is the owner of and actually riding in the automobile described in said policy, and that such total loss of time, in event such is claimed, shall wholly disable the said plaintiff from performing each and every duty for a period not exceeding thirty weeks and that said policy further provided that strict com-

pliance with all its provisions is a condition precedent to recovery thereunder. It was also averred in said special notice that plaintiff did not sustain any loss of time exclusively by reason of injuries effected solely through external, violent, and purely accidental means, as described in the policy.

The husband of the appellee, R. C. Randel, on November 1, 1935, made the following statement to a representative of the appellant insurance company: "My name is R. C. Randel, Canton, Miss. On June 1, 1935, at about 12:15 P. M., I was riding on the front seat of Ford Sedan, which was being driven South on Highway #51 by Mrs. L. T. Randel, when we had a mishap right in front of Mrs. W. J. Lutz house. We were going 25 to 30 miles per hour, and my wife, Mrs. Laura T. Randel, blew her horn for a car in front to move over and let us pass. Instead of doing this, the car stopped in the middle of the street, and in order to avoid hitting this car, Mrs. Randel put on her brakes and turned to the left, and the two front wheels mounted the curb of the neutral ground before she could stop. None of us in the car were struck or hurt. Mrs. Randel did not lose control of the car and no part of the car struck her— the steering wheel did not strike her, and she did not make any complaint until after we had gotten home, she sat down in a chair, and while sitting there she became very nervous and fainted. She did not fall out of the chair or strike herself. She had to go to bed and we called the Doctor at once. The Doctor diagnosed the case as shock due to the fright of the near auto collision. She was confined to her bed for 14 weeks. She has been able to attend to part of her household duties since that time. On July 9, 1935, she was operated on for infected gall bladder and drainage instituted. I have read the above and same is correct."

On November 11, 1935, Mrs. Laura T. Randel, appellee, made the following statement: "I have read the

statement of my husband on the reverse side and it is correct. At the time I drove up on the curb, I was not struck by any part of the car. It just made me nervous, and by the time we reached home I was so nervous that I fainted while sitting in a chair. I have been disabled since that time. I have read the above and it is correct.''

The testimony of Mrs. Randel, the appellee, showed that previously she had no inflammation of the gall bladder duct, and that she was a housewife by occupation, and that, during the period from June 1 to a date in September, 1935, she was wholly disabled, and unable to perform any of her duties. It was shown on the trial that appellee was rendered insensible to pain and did not know what happened when she struck the curb; that she drove the car home, her husband being unable to drive; and that her injury was occasioned by striking the curb in an effort to avoid a collision with the car in front of her.

The appellant, the insurance company, contends that the proof is insufficient to show that the injury occurred by violent, external, accidental means, and that the appellee deliberately ran into the curb to avoid injury.

She turned to the curb to avoid striking the car in front of her.

We have carefully read the testimony, especially that of the attending physician, and we think it is clear, from the evidence, that Mrs. Randel's injury was occasioned by external, violent, and accidental means, caused by her striking the steering wheel when she struck the curb. From the evidence, we are also of the opinion that the appellee swerved to the left to avoid a collision with the car in front, and that this was done in an emergency and for the purpose of avoiding a much greater injury not only to herself, but to the occupants of the other car. Under such circumstances, the mind has no time to deliberate upon a course of action, and any injury so inflicted is through accidental means.

The appellant, the insurance company, requested an instruction to the effect that the appellee was guilty of violating a city ordinance which limited the speed on its streets to fifteen miles per hour. This instruction was refused by the court. It was agreed that there was such an ordinance, but there was nothing in the policy in question which was breached by this violation of the city ordinance, which could only be availed of, if at all, under a plea of negligence in mitigation of the damages, and there was no such plea filed in this case.

We are of the opinion that there was no error in the court below that would warrant a reversal, and the judgment, therefore, is affirmed.

Affirmed.